IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 13, 2013 Session

**PAMELA MOSES v. JAYANTA K. DIRGHANGI, MD**

**Appeal from the Circuit Court for Shelby County**
**No. CT00028911      Kay S. Robilio, Judge**

_____

**No. W2011-02403-COA-R3-CV - Filed October 3, 2013**

_____

This case involves allegations of medical battery and medical malpractice surrounding an exam performed on a patient while she was admitted to a hospital to give birth. The trial court dismissed any allegations for medical battery for failure to state a claim upon which relief could be granted, finding that the patient's complaint failed to include allegations that the exam was performed without the patient's authorization. The trial court further dismissed any remaining malpractice claims for failure to comply with the Tennessee Medical Malpractice Act notice requirements. Discerning no error, we affirm the decision of the trial court.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Pamela Moses, Memphis, Tennessee, Pro Se.

Darrell E. Baker, Jr., Deborah Whitt, and M. Jason Martin, Memphis, Tennessee, for the Appellee, Jayanta K. Dirghangi, M.D.

OPINION

**I. Background**

On January 20, 2011, Plaintiff/Appellant Pamela Moses, filed a complaint in the Circuit Court of Shelby County arising from medical treatment provided by Defendant/Appellee Jayanta K. Dirghangi, M.D. ("Appellee").[1] The complaint alleged that while Ms. Moses was in Methodist Hospital Germantown to give birth, on July 18, 2008, Appellee performed a vaginal exam on Ms. Moses in a "forceful and abusive manner." Specifically, the complaint asserted that:

> 3. [O]n July 18, 2008, [Ms. Moses] was a patient of [Appellee] for childbirth and was confined to Methodist Hospital Germantown. After 5 pm on that date, [Appellee] came into her room in what appeared to be a very angry and aggressive mood and began to do a vaginal exam in such a forceful and abusive manner that she was torn and suffered injury requiring extensive medical treatment.
> 4. [Ms. Moses] alleged that the conduct of [Appellee] was intentional and amounted to an assault and as a direct and proximate result of the assault she suffered injuries [, including] excruciating pain and mental anguish[,] and that she will suffer pain and mental anguish in the future as a direct and proximate result of the injuries [caused] by [Appellee].

Appellee filed an Answer on February 24, 2011, denying the material allegations contained in the complaint. The Answer also sought attorneys fees on behalf of Appellee. On the same day, Appellee also filed a Motion to Dismiss the complaint, contending that Ms. Moses' complaint failed to state a claim for medical battery and that, with regard to any claims for medical malpractice, Ms. Moses failed to file a certificate of good faith pursuant to Tennessee Code Annotated Section 29-26-122. The Motion also alleged that Ms. Moses failed to provide timely pre-suit notice of the claim, and failed to file a copy of any pre-suit notice and proof of service with the complaint as required by the medical malpractice statutes. Ms. Moses filed a response in opposition on April 13, 2011. Specifically, Ms. Moses argued that her claim was for assault and/or medical battery and that pre-suit notice was, therefore, not required.

---

[1] Ms. Moses originally filed her complaint in the Shelby County General Sessions Court on June 30, 2009. The General Sessions lawsuit was filed by Ms. Moses, appearing *pro se.* A copy of the General Sessions complaint is not included in the record on appeal. According to Ms. Moses' Circuit Court complaint, the General Sessions complaint was eventually non-suited on January 20, 2010. There is no dispute that the Circuit Court complaint was filed within one year of the non-suit, as required by Tennessee Code Annotated Section 28-1-105(a).

The trial court granted Appellee's Motion to Dismiss by order of April 29, 2011. The trial court concluded that Ms. Moses failed to make out a medical battery claim because there was no allegation that Ms. Moses was unaware of, or did not authorize, the vaginal exam performed by Appellee. The trial court further ruled that any medical negligence claims were also to be dismissed for failure to comply with the pre-suit notice requirement, or the certificate of good faith requirement. Thus, the trial court dismissed all of Ms. Moses' claims.

Ms. Moses filed a Motion to Alter or Amend the Judgment on May 31, 2011, alleging that her cause of action was for assault and that there were no pre-suit notice requirements for this cause of action. Appellee filed a response, arguing that Ms. Moses was asserting the same argument as she had been in response to Appellee's Motion to Dismiss. The trial court denied the Motion to Alter or Amend by order of September 30, 2011. The trial court later entered an order denying Appellee's request for attorney fees on November 30, 2012.

Ms. Moses appeals, raising a number of issues.[2] As we perceive it, however, there are two issues in this case:

1. Whether the trial court erred in concluding that Ms. Moses' complaint failed to state a cause of action for medical battery?
2. Whether the trial court erred in concluding that any claims of medical malpractice were barred by failure to file a certificate of good faith concurrent with the filing of the claim pursuant to the Tennessee Medical Malpractice Act?

Based on the analysis below, we affirm the decision of the trial court.

## II. Standard of Review

Ms. Moses' complaint was dismissed for failure to state a claim upon which relief can be granted. Accordingly, we will consider her appeal under the standard of review applicable to motions to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6). An essential purpose of a pleading is to give notice of the issues to be tried so that the opposing party will be able to prepare for trial. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010). A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007). It admits the truth of all relevant and material allegations, but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44, 47

---

[2]Although Ms. Moses was represented by counsel in the trial court, she is appearing before this Court *pro se*.

(Tenn. 1997). These motions are not favored and are rarely granted in light of the liberal pleading standards contained in the Tennessee Rules of Civil Procedure. ***Dobbs v. Guenther***, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). Moreover, pleas or counts contained in a complaint will be given the effect required by their content, without regard to the name given them by the pleader. ***State By and Through Canale ex rel. Hall v. Minimum Salary Dept. of African Methodist Episcopal Church, Inc.***, 477 S.W.2d 11 (Tenn. 1972).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to an examination of the complaint alone. *See* ***Wolcotts Fin. Serv., Inc. v. McReynolds***, 807 S.W.2d 708, 710 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See* ***Cornpropst v. Sloan***, 528 S.W.2d 188 (Tenn. 1975). Although allegations of pure legal conclusion will not sustain a complaint, *see* ***Ruth v. Ruth***, 213 Tenn. 82, 372 S.W.2d 285, 287 (1963), a complaint "need not contain in minute detail the facts that give rise to the claim," so long as the complaint does "contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." ***Donaldson v. Donaldson***, 557 S.W.2d 60, 61 (Tenn. 1977); ***White v. Revco Discount Drug Centers***, 33 S.W.3d 713, 718, 725 (Tenn. 2000); *accord*, ***Givens v. Mullikin ex rel McElwaney***, 75 S.W.3d 383, 391, 399, 403-404 (Tenn. 2002). In short, a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss seeks only to determine whether the pleadings state a claim upon which relief can be granted, and such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof. ***Bell ex rel. Snyder v. Icard***, 986 S.W.2d 550, 554 (Tenn.1999). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See* ***Cook ex. rel. Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934, 938 (Tenn.1994). However, we are not required to accept as true factual inferences or conclusions of law. ***Riggs v. Burson***, 941 S.W.2d 44, 47–48 (Tenn.1997). An appellate court should uphold the grant of a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief. ***Young v. Barrow***, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003).

We further note that Tennessee Rule of Civil Procedure 12.02(6) motions are not designed to correct inartfully drafted pleadings. ***Dobbs v. Guenther***, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). However, a complaint should not be dismissed, no matter how inartfully drafted, if it states a cause of action. ***Id.*** (citing ***Paschall's, Inc. v. Dozier***, 219 Tenn. 45, 407 S.W.2d 150, 152 (Tenn.1966); ***Collier v. Slayden Bros. Ltd. Partnership***, 712 S.W.2d 106, 108 (Tenn. Ct. App.1985)). Nonetheless, there is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint. ***Utter v. Sherrod***, 132 S.W.3d 344 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. March 8, 2004). But while we should not endeavor to create claims where none exist, we must always look to the substance

of the pleading rather than to its form. ***Dobbs***, 846 S.W.2d at 273 (citing ***Donaldson v. Donaldson***, 557 S.W.2d 60, 62 (Tenn. 1977); ***Usrey v. Lewis***, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977)).

As a point of practice, we note that although Ms. Moses was represented by counsel in the trial court, she is proceeding *pro se* in this appeal. However, it is well-settled that, "[w]hile a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, [*p*]*ro se* litigants are not . . . entitled to shift the burden of litigating their case to the courts." ***Chiozza v. Chiozza***, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009). Accordingly, "[ *p*]*ro se* litigants must comply with the same substantive and procedural law to which represented parties must adhere." ***Id.***

### III. Analysis

### A. Medical Battery

We begin with the question of whether the trial court properly dismissed Ms. Moses' complaint for failure to state a claim for medical battery. In this case, the trial court dismissed any medical battery allegations allegedly raised by the complaint for failure to state a claim upon which relief could be granted. Specifically, the trial court held that the complaint failed to allege that Ms. Moses did not consent to the exam performed by the Appellee.

In Tennessee, medical battery is a very narrow area of the law. A medical battery typically occurs when "(1) a professional performs a procedure that the patient was unaware the doctor was going to perform; or (2) the procedure was performed in a part of the body other than that part explained to the patient (i.e., amputation of the wrong leg)." ***Ashe v. Radiation Oncology Assoc.***, 9 S.W.3d 119, 121 (Tenn. 1999). This Court has set forth a "simple inquiry" to determine whether a case constitutes a medical battery:

> (1) was the patient aware that the doctor was going to perform the procedure (i.e., did the patient know that the dentist was going to perform a root canal on a specified tooth or that the doctor was going to perform surgery on the specified knee?); and, if so (2) did the patient authorize performance of the procedure? A plaintiff's cause of action may be classified as a medical battery only when answers to either of the above questions are in the negative."

***Blanchard v. Kellum***, 975 S.W.2d 522, 524 (Tenn. 1998). "The primary consideration in a medical battery case is simply whether the patient knew of and authorized a procedure. This

determination does not require the testimony of an expert witness." *Id.* Because a medical battery claim does not require expert proof, a plaintiff bringing this claim is not required to file a certificate of good faith pursuant to the Tennessee Medical Malpractice Act, as discussed in detail in the next section. *See* ***Hinkle v. Kindred Hosp.***, No. M2010-02499-COA-R3-CV 2012 WL 3799215, at *17, n.11 (Tenn. Ct. App. Aug. 31, 2012) ("Since expert testimony is not required to sustain a claim for medical battery, we concluded that the certificate need not be filed to support such claims."). As further explained by this Court:

> A medical battery occurs when a physician performs an unauthorized procedure. Typically, a medical battery involves a physician performing a procedure that the patient did not know the physician was going to perform or a physician performing a procedure on a part of the body other than the one described to the patient. *See* ***Ashe v. Radiation Oncology Assocs.***, 9 S.W.3d 119, 121 (Tenn. 1999). The controlling factual issues in these cases are whether the patient knew the physician was going to perform the procedure and whether the patient authorized the physician to perform it. According to the Tennessee Supreme Court, if the answer to either of these questions is no, a medical battery has been committed. *See* ***Blanchard v. Kellum***, 975 S.W.2d at 524.

***Church v. Perales***, 39 S.W.3d 149, 159 (Tenn. Ct. App. 2000); *see also* ***Kline by Kline v. Jordan***, 685 S.W.2d 295, 296 (Tenn. Ct. App. 1984) ("For a cause of action for assault and battery to arise, there must be an absence of consent.").

Turning to Ms. Moses' complaint, there are no allegations that the exam performed by Appellee was not authorized by Ms. Moses. Again, Ms. Moses alleged that: "[Appellee] came into her room in what appeared to be a very angry and aggressive mood and began to do a vaginal exam in such a forceful and abusive manner that she was torn and suffered injury requiring extensive medical treatment." However, nothing in these allegations, even taken as true, suggests that Ms. Moses did not consent to this exam or that she was unaware that the exam was going to be performed. Thus, even giving all reasonable inference in favor of Ms. Moses, as we must at the motion to dismiss stage, we cannot draw a logical inference that either of the two ***Blanchard*** questions, *supra,* are affirmatively pled in the complaint.

Based on her failure to allege that the exam was performed without consent, the Appellee urges us to affirm the trial court's determination that Ms. Moses complaint failed to state a claim for medical battery. We agree. The Tennessee Supreme Court recently explained the threshold requirement to survive a motion to dismiss for failure to state a claim

upon which relief can be granted in *Webb v. Nashville Area Habitat for Humanity, Inc*., 346 S.W.3d 422 (Tenn. 2011):

> To be sufficient and survive a motion to dismiss, a complaint must not be entirely devoid of factual allegations. Tennessee courts have long interpreted Tennessee Rule of Civil Procedure 8.01 to require a plaintiff to state "'the facts upon which a claim for relief is founded.'" *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986) (quoting *W & O Constr. Co. v. City of Smithville*, 557 S.W.2d 920, 922 (Tenn. 1977)). A complaint "need not contain detailed allegations of all the facts giving rise to the claim," but it "must contain sufficient factual allegations to articulate a claim for relief." *Abshure*, 325 S.W.3d at 103–04. "The facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level." *Id.* at 104. Thus, as we observed in *Leach*,
>
>> "While a complaint in a tort action need not contain in minute detail the facts that give rise to the claim, it must contain direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader, or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial."
>
> 124 S.W.3d at 92 (quoting *Donaldson v. Donaldson*, 557 S.W.2d 60, 61 (Tenn. 1977)) (alteration in original); *accord Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 399 (Tenn. 2002). Moreover, courts are not required to accept as true assertions that are merely legal arguments or "legal conclusions" couched as facts. *Riggs v. Burson*, 941 S.W.2d 44, 47–48 (Tenn.1997).

*Webb*, 346 S.W.3d at 427. This Court has observed that while the threshold for surviving a motion to dismiss for failure to state a claim upon which relief can be granted is "generally low," the plaintiff is not thereby absolved from making appropriate allegations in his or her complaint:

> [M]inimal requirements are not tantamount to nonexistent requirements. The threshold may be low, but it is real-and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation. The court need not conjure up unpled allegations or contrive elaborately arcane scripts in order to carry the blushing bride through the portal.

*Steele v. Ritz*, No. W2008-02125-COA-R3-CV, 2009 WL 4825183, at *4 (Tenn. Ct. App. Dec. 16, 2009) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513 (1st Cir. 1988)). Indeed, the Tennessee Supreme Court has recognized that despite the liberal pleading standard set forth in Tennessee Rule of Civil Procedure 8.01 "'[t]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint.'" *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 704 (Tenn. 2002) (quoting *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn. 1977)). "When the Court is dealing simply with allegations of pleadings, . . . the Court is not free to construct additional facts or allegations." *Chism v. Mid-South Milling Co., Inc.*, 762 S.W.2d 552 (Tenn. 1988).

In this case, Ms. Moses' complaint contains no allegations that she did not authorize the examination or that she was in any way unaware that the exam was to be performed. Because we are not free to construct additional allegations, we must conclude, as did the trial court, that any claim for medical battery is deficient without such an allegation. Nothing in the record suggests that Ms. Moses ever sought leave from the trial court to amend her complaint to include additional allegations regarding Appellee's authorization, or lack thereof, to perform the exam. Instead, in response to Appellee's Motion to Dismiss in the trial court, Ms. Moses argued that "[i]t is reasonable to infer that plaintiff was not aware that the defendant was going to perform the procedure that injured her and did not authorize same." Respectfully, from the facts alleged by Ms. Moses in her complaint, we conclude that it is not a reasonable inference to conclude that Appellee lacked Ms. Moses' authorization to perform the procedure. Indeed, we conclude that, without a specific allegation of a lack of authorization, it would be unreasonable to conclude that Ms. Moses did not authorize the vaginal exam in this case, given that Appellee was a physician in the hospital where Ms. Moses was admitted to give birth. Simply put, without some allegation of a lack of authorization, even taking all of Ms. Moses' other allegations as true, as we must at the motion to dismiss stage, her complaint fails to make out a *prima facie* claim for medical battery.

The situation in this case is similar to the Tennessee Supreme Court case of *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002). In *Trau-Med*, the plaintiff asserted a claim for civil conspiracy against the defendant insurance company. The trial court dismissed the civil conspiracy claim for failure to state a claim upon which

relief could be granted. The Court of Appeals, however, reversed the trial court, "maintaining that 'under a proper set of facts,' the corporate individuals could be held liable for conspiring to further their own individual interests." *Id.* at 704 (citing *Trau-Med of America, Inc. v. Allstate Ins. Co.*, No. W1999-01524-COA-R3-CV, 2000 WL 1839125, at *8 (Tenn. Ct. App. Nov. 29, 2000)). The Supreme Court reversed the Court of Appeals and reinstated the dismissal, noting:

> We disagree [with the decision of the Court of Appeals] and conclude that the plaintiff has not made sufficient allegations to support a claim of civil conspiracy. Although a complaint "need not contain in minute detail the facts that give rise to the claim," the complaint must at least "contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Donaldson v. Donaldson*, 557 S.W.2d 60, 61 (Tenn.1977).

*Trau-Med*, 71 S.W.3d at 704. The Supreme Court noted that "for a claim of intracorporate conspiracy to be actionable, the complaint must allege that corporate officials, employees, or other agents acted outside the scope of their employment and engaged in conspiratorial conduct to further their own personal purposes and not those of the corporation." *Id.* (citing *Renner v. Wurdeman*, 231 Neb. 8, 434 N.W.2d 536, 542 ( Neb. 1989)). Because the complaint failed to allege that the corporate employees/agents at issue were acting outside the scope of their employment, the Supreme Court concluded that, even taking all the allegations in the complaint as true, the plaintiff failed to make out a *prima facie* claim for civil intracorporate conspiracy. *Id.* at 705. Thus, in *Trau-Med*, the Supreme Court affirmed the trial court's dismissal of the civil conspiracy allegations for failure to plead sufficient facts regarding an essential element of the claim.

The same is true in this case. Without some specific allegations or a reasonable inference therefrom that there was a lack of authorization to perform the exam, no claim for medical battery can lie. Because Ms. Moses never attempted to amend her complaint to add additional factual allegations required to show a lack of authorization, any claim she attempted to assert with regard to medical battery is fatally deficient. At most, Ms. Moses' complaint alleges that she was injured by the way in which Appellee performed the vaginal exam, not that she did not authorize the exam. Thus, the complaint contains only a claim for medical malpractice. Even if we were to conclude that Ms. Moses complaint fairly raises an issue as to informed consent, i.e., that Appellee did not supply appropriate information to Ms. Moses in obtaining her consent to the procedure, this claim is governed by the Tennessee

Medical Malpractice Act, and also fails, as discussed in detail below.[3]  The trial court, thus, did not err in dismissing any medical battery claim that Ms. Moses attempted to assert.

## B. Medical Malpractice

Having concluded that Ms. Moses' complaint fails to make out a claim for medical battery, but instead asserts a claim for either medical malpractice or informed consent, we next consider whether Ms. Moses complied with the notice provisions of the Tennessee Medical Malpractice Act.[4]  The notice requirements applicable to a medical malpractice action are governed by Tennessee Code Annotated Section 29-26-121(a), which provides:

> (1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.
> (2) The notice shall include:

---

[3] Specifically, informed consent actions are governed by Tennessee Code Annotated Section 29-26-118, which provides:

> In a health care liability action, the plaintiff shall prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices and in similar communities.

Thus, expert proof is required to establish an informed consent action. *See* Tenn. Code Ann. § 29-26-115(b) (discussing the competency of medical professionals to testify as to the recognized standard of care in a medical malpractice action). Tennessee Code Annotated Section 29-26-122 specifically states that the good faith certificate requirement shall apply "[i]n any health care liability action in which expert testimony is required by § 29-26-115." Thus, the good faith certificate requirement applies to a claim of lack of informed consent.

[4] In 2012, the Tennessee General Assembly saw fit to amend sections of the Medical Malpractice Act to change the term used to describe actions against doctors and hospitals for professional negligence from "medical malpractice" to "health care liability." *See* 2012 Tenn. Pub. Acts, ch. 798, § 1–59. Because this case was filed prior to the amendments, we will refer to this action by its previous title. The 2012 amendment to replace "medical malpractice" with "health care liability" had no substantive effect on the operation of the statute to this case.

(A) The full name and date of birth of the patient whose treatment is at issue;

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C) The name and address of the attorney sending the notice, if applicable;

(D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Thus, notice pursuant to the above rules is required to be given "at least sixty (60) days before the filing of the complaint." *Id.* In addition, Tennessee Code Annotated Section 29-26-122 provides, in relevant part:

(a) In any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause.

According to Appellee's Memorandum in Support of his Motion to Dismiss, Ms. Moses provided notice only thirty-six days prior to filing her complaint. Ms. Moses does not appear to dispute that the notice was not timely provided prior to the commencement of this suit. Further, the record on appeal contains no certificate of good faith, nor does Ms. Moses argue that she ever filed a certificate of good faith in this case, or in the prior General Sessions lawsuit. There have been no allegations that Appellee or any other medical provider failed to timely supply Ms. Moses with the necessary documents. Instead, Ms. Moses argues that she has demonstrated extraordinary cause from which compliance with both the notice requirement and the good faith certificate requirement should be excused. From our review of the record, however, Ms. Moses never raised the issue of extraordinary cause to the trial court. It is well settled that issues not raised at the trial level are considered waived on appeal. *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009) (stating that issues not raised in the trial court are waived on appeal); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error who failed to take

whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Accordingly the issue of extraordinary cause is waived. Even assuming, *arguendo*, that Ms. Moses properly raised her extraordinary cause argument, we conclude that Ms. Moses has not demonstrated extraordinary cause to excuse her failure to comply with the certificate of good faith requirement. Therefore, Tennessee Code Annotated Section 29-26-122 mandates that her medical malpractice claims "shall be dismissed."

The Tennessee Supreme Court in *Myers v. Amisub (SFH), Inc.*, 382 S.W.3d 300 (Tenn. 2012), recently determined that the failure to file a certificate of good faith with a medical malpractice complaint is fatal to the action. The Court explained:

> Tennessee Code Annotated section 29-26-121 expressly provides that "[a]ny person . . . asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state." Tenn. Code Ann. § 29-26-121(a)(1) (emphasis added). Tennessee Code Annotated section 29-26-122 expressly provides that "[i]n any medical malpractice action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint." Tenn.Code Ann. § 29-26-122(a) (emphasis added). The use of the word "shall" in both statutes indicates that the legislature intended the requirements to be mandatory, not directory. *Bellamy v. Cracker Barrel Old Country Store*, Inc., 302 S.W.3d 278, 281 (Tenn. 2009) (quoting *Stubbs v. State*, 216 Tenn. 567, 393 S.W.2d 150, 154 (1965) (" 'When 'shall' is used . . . it is ordinarily construed as being mandatory and not discretionary.' ")).

> \* \* \*

> The essence of Tennessee Code Annotated section 29-26-121 is that a defendant be given notice of a medical malpractice claim before suit is filed. The essence of Tennessee Code Annotated section 29-26-122 is that a defendant receive assurance that there are good faith grounds for commencing such action. The requirements of pre-suit notice of a potential claim under Tennessee Code Annotated section 29-26-121 and the filing of a certificate of good faith under Tennessee Code Annotated

section 29-26-122 are fundamental to the validity of the respective statutes and dictate that we construe such requirements as mandatory.

*Myers*, 382 S.W.3d at 308–09.

In *Myers*, the plaintiff had non-suited his original complaint and re-instituted the action pursuant to the Savings Statute. *Id.* at 303. When the complaint was re-filed, however, the plaintiff failed to timely submit pre-suit notice of the claim or to file a certificate of good faith. The defendants filed a motion to dismiss the complaint on that basis. The plaintiff argued, however, that the failure to comply with the Medical Malpractice Act was excused because "the defendants had notice of the re-filed cause of action from the proceedings in the original suit and that the certificate of good faith requirement . . . was satisfied by expert disclosures filed in the original suit." *Id.* at 306. The trial court agreed and held that because of the notice provided by the first suit, there was extraordinary cause sufficient to excuse strict compliance with the notice requirements in the second suit. *Id.* at 306–07. The Tennessee Supreme Court disagreed, however, explaining:

> When [the plaintiff] dismissed his first suit and filed his second complaint, he instituted a new and independent action, bearing a separate docket number. *See Old Hickory Eng'g & Mach. Co. v. Henry*, 937 S.W.2d 782, 784–85 (Tenn. 1996) (holding that, in accordance with Rule 3 of the Tennessee Rules of Civil Procedure, a "new action," as contemplated by the saving statute, is commenced when a complaint is filed); *see also Frye v. Blue Ridge Neurosci. Ctr.*, P.C., 70 S.W.3d 710, 713 (Tenn. 2002) (finding second complaint to be a new action as evidenced by its new docket number). [The plaintiff's] original cause of action ceased to exist when the trial court granted his voluntary nonsuit . . . . *Oliver v. Hydro-Vac Servs.*, 873 S.W.2d 694, 696 (Tenn. Ct. App. 1993) ("No present controversy exists after the plaintiff takes a nonsuit. The lawsuit is concluded . . . .") (citation omitted); 1 Lawrence A. Pivnick, Tennessee Circuit Court Practice § 23.1 (2011 ed.) ("When a voluntary nonsuit has been taken, the action is terminated."). Although the dismissal of the original complaint demarcated the beginning of the one-year period during which [the plaintiff] could commence a new action under the savings statute, the original action did not survive, nor did the dismissal in any way indicate whether [the plaintiff] would assert a claim in the

future. *See Oliver*, 873 S.W.2d at 696 ("The plaintiff's refiling the suit [after taking a nonsuit] is a contingent event that may not occur.").

By passing this statute, the legislature intended to give prospective defendants notice of a forthcoming lawsuit. In Senate committee discussion of the bill that introduced Tennessee Code Annotated sections 29-26-121 and 122, the bill's co-sponsor, Senator Mark Norris, stated that the new law was "designed to give people notice that there's about to be a claim and to put everyone who might be involved on notice that a suit will shortly be filed." Without the notice required by Tennessee Code Annotated section 29-26-121, Defendants were not apprised that [the plaintiff] continued to assert a claim against them and that a suit would be filed and were therefore deprived of the notice required by Tennessee Code Annotated section 29-26-121. With respect to Tennessee Code Annotated section 29-26-122, after [the plaintiff's] original action terminated, he could not rely on statements made by experts relative to that action as a substitute for a certificate of good faith filed with his new action because the statute provides that "[i]f the certificate is not filed with the complaint, the complaint shall be dismissed." Tenn. Code Ann. § 29-26-122(a). The statements upon which [the plaintiff] seeks to rely were not filed with his new complaint.

*Myers*, 382 S.W.3d at 309–10 (footnotes omitted).

Thus, the Tennessee Supreme Court held that the notice provided by filing a prior suit was not sufficient to constitute extraordinary cause sufficient to excuse strict compliance with the good faith certificate requirement when filing a new complaint. In this case it is undisputed that Ms. Moses failed to file a certificate of good faith concurrent with the filing of her Circuit Court complaint. Based on the foregoing, we must conclude that Ms. Moses' failure to file a certificate of good faith with her second complaint is fatal to any claims of medical malpractice that she may have alleged. Because Ms. Moses' failure to file a certificate of good faith is fatal to her medical malpractice claims, any issue of her failure to comply with the medical malpractice pre-suit notice requirements is pretermitted. Accordingly, the trial court's dismissal of those claims is affirmed.

## IV. Conclusion

-14-

Based on the foregoing, the judgment of the Shelby County Circuit Court is affirmed. This cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are assessed against Appellant Pamela Moses. Because it appears that Ms. Moses is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
J. STEVEN STAFFORD, JUDGE